BLANK ROME, LLP
Attorneys for Plaintiff
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH, | 09 Civ. |
| Plaintiff, | **VERIFIED COMPLAINT** |
| -against- | |
| HONG KONG JINHAI SHIPPING CO., LTD. and BEST UNION TRANSPORTATION LIMITED, | |
| Defendants. | |

Plaintiff, SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH ("Plaintiff"), by its attorneys Blank Rome, LLP, complaining of the above-named Defendants, HONG KONG JINHAI SHIPPING CO. LTD. ("JINHAI") and BEST UNION TRANSPORTATION LIMITED ("BEST UNION") (collectively, "Defendants"), alleges upon information and belief as follows:

1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

2.    At all material times, Plaintiff was and now is a foreign corporation.

900200.00001/6789738v.1

3.     At all material times, Defendant JINHAI and BEST UNION were and are foreign corporations organized under the laws of Hong Kong Special Administrative Region with their registered office at Unit 2A, 2/F, Kingswell Commercial Tower, 171-173 Lockhart, Wanchai, Hong Kong and no office or place of business in this Judicial District.

## AS A FIRST CLAIM, AGAINST JINHAI

4.     On or about February 28, 2008, Plaintiff, as charterer, entered into a time-charter party with Defendant JINHAI of the M/V JINBIN ("the Vessel") for a period of 24 plus 12 months at Plaintiff's option ("the Charter). (Ex. A hereto.)

5.     Upon the Vessel's arrival at the delivery port in China, Plaintiff paid JINHAI advance charter hire and the price of fuel and diesel oil on board.

6.     Upon preparing to load a cargo, substantial Vessel defects were found and JINHAl directed the Vessel to Shanghai for repairs. In view of the Vessel's condition and the lost time, both parties treated the Charter as terminated as of July 15, 2008.

7.     Clause 30 of the first set of Additional Clauses required Plaintiff to pay JINHAI for the value of fuel and diesel on board at the time of delivery, and for JINHAI to pay Plaintiff for the value of fuel and diesel on board at the time of redelivery. Clause 9 of the second set of Additional Clauses provided that the fuel and diesel prices at delivery and redelivery would be US\$520/m.t. for fuel oil and US\$695/m.t. for diesel oil.

8.     The parties agree that the fuel oil on board at redelivery was 212.8 m.t. and the diesel oil on board at the time of redelivery was 46.466 m.t. (Ex. B.) The total value at the agreed price, therefore, was US\$142,949.87.

9.     JINHAI has paid no part of the said value of the redelivery fuel and diesel oil, despite due demand, and Plaintiff is entitled to judgment against JINHAI in the amount of US142,949.87 plus interest and costs.

## AS A SECOND CLAIM, AGAINST BEST UNION

10.    Instead of invoicing Plaintiff for charter hire in the name of JINHAI, Defendants submitted the hire invoice in the name of BEST UNION.  (Ex. C.)

11.    A company search has disclosed that JINHAI and BEST UNION share the same registered address, director, Fan Jin Kui, and corporate secretary, Normsun Corporate Secretarial Services Limited. Additionally, Fan Jin Kui is a shareholder of BEST UNION.

12.    Upon information and belief, BEST UNION is used by JINHAI as a paying agent in whose name to transfer U.S. Dollars for the purpose of avoiding maritime attachments in this Court and in order to conceal their assets from legitimate creditors such as Plaintiff.

13.    Upon information and belief, any conveyance to BEST UNION of funds due to and owned by JINHAI is fraudulent and made without any consideration, for the purpose of defrauding JINHAI's legitimate creditors, such as Plaintiff.

14.    Upon information and belief, JINHAI and BEST UNION are commonly owned and/or managed and controlled, and JINHAI or its owners exercise dominion over BEST UNION, and both Defendants commingle their funds, so as to support the conclusion that all the Defendants operate as if they are a single business entity, in disregard of their separate corporate integrity, and therefore are alter egos of one another.

15.    By reason of the premises, BEST UNION should be held liable for JINHAI's debts, and specifically for the damages sustained by Plaintiff in the sum of US$142,949.87 plus interest and costs.

16.    The Charter provides for arbitration of disputes in London and the application of English law, and Plaintiff shortly will commence arbitration. Plaintiff reserves its right to have the merits of its claims determined in arbitration, pursuant to 9 U.S.C. § 8.

17.    Arbitrators in London routinely award interest, arbitrators' fees and legal fees to the successful party. Plaintiff estimates it will recover interest in London arbitration of at least US$34,308 at a rate of 8% for a period of three years, plus legal fees of at least US$50,000, plus arbitrators' fees of at least US$50,000.

18.    The total amount for which Plaintiff seeks issuance of Process of Maritime Attachment and Garnishment is **US$277,257.87**.

19.    Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers, because Defendants conducts business internationally in U.S. Dollars, and all electronic fund transfers are processed by intermediary banks in the United States, primarily in New York.

20.    Defendants are engaged in the international shipping industry, in which business is nearly universally done in U.S. dollars. All international transfers must be processed through intermediary banks in the United States, almost always located in New York City.

21.    Additionally, clause 48 of the Charter shows that JINHAI maintains a U.S. Dollar account at Bank of China in Hong Kong, and the hire in this case was remitted to BEST UNION in U.S. Dollars as well.

**WHEREFORE**, Plaintiff prays:

A.  That process in due form of law issue against the Defendants, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.  That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee in the District which are due and owing or otherwise the property of to the Defendants up to the amount of **US$277,257.87** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.  That this Court appoint a substitute process server;

D.  That this Court award Plaintiff its damages or retain jurisdiction over this matter through the entry of a judgment on the London arbitration award.

E.  That Plaintiffs may have such other, further and different relief as may be just and proper.

Dated:  New York, NY
      September 25, 2009

                                  Respectfully submitted,
                                  BLANK ROME, LLP
                                  Attorneys for Plaintiff

                                  By_____
                                     Jack A. Greenbaum (JG 0039)
                                  The Chrysler Building
                                  405 Lexington Ave.
                                  New York, NY  10174-0208
                                  (212) 885-5000
                                  jgreenbaum@blankrome.com

## VERIFICATION

STATE OF NEW YORK     )
                        : ss.:
COUNTY OF NEW YORK   )

Jack A. Greenbaum, being duly sworn, deposes and says:

1.     I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for the Plaintiff.

2.     I have read the foregoing Complaint and I believe the contents thereof are true.

3.     The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.     The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

Jack A. Greenbaum

Sworn to before me this
25th day of September, 2009.

Notary Public

MICHELE GRANITO
Notary Public, State of New York
No. 01GR6202734
Qualified in Richmond County
Commission Expires Mar 23, 20_13_

BLANK ROME LLP
Attorneys for Plaintiff
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH,<br><br>Plaintiff,<br><br>-against-<br><br>HONG KONG JINHAI SHIPPING CO., LTD. and BEST UNION TRANSPORTATION LIMITED,<br><br>Defendants. | 09 Civ.<br><br>**AFFIDAVIT UNDER SUPPLEMENTAL RULE B AND IN SUPPORT OF REQUEST FOR APPOINTMENT TO SERVE PROCESS** |

STATE OF NEW YORK )
                   )   ss:
COUNTY OF NEW YORK )

JACK A. GREENBAUM, being duly sworn, deposes and says:

1.     I am a member of the Bar of this Honorable Court and a member of the firm of

Blank Rome, LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the

complaint and submit this affidavit in support of Plaintiff's request for the issuance of process of

maritime attachment and garnishment of the property of defendants, HONG KONG JINHAI

SHIPPING CO., LTD. and BEST UNION TRANSPORTATION LIMITED, ("Defendants"),

foreign corporations, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure.

2.      Defendants are foreign corporations, with no office or place of business in this Judicial District.

3.      Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general internet search.

4.      In our search, we did not find any listing or reference to Defendants in this judicial district or the state of New York. In the circumstances, I believe Defendants cannot be found within this district.

5.      We have been advised that the U.S. Marshal's Service lacks sufficient staff to effect service of Process of Maritime Attachment and Garnishment promptly or economically. I respectfully request that the Court appoint Michael Watson, or any other person appointed by Blank Rome LLP who is over 18 years of age and is not a party to this action, to serve Process of Maritime Attachment and Garnishment and supplemental process upon garnishees in this matter.

6.      It is respectfully requested that the aforementioned person, Michael Watson, or any other person appointed by Blank Rome, LLP who is over 18 years of age and not a party to this action, be appointed to effect such service.

_____

JACK A. GREENBAUM

Sworn to before me this
25th day of September, 2009

_____
Notary Public

MICHELE GRANITO
Notary Public, State of New York
No. 01GR6202734
Qualified in Richmond County
Commission Expires Mar 23, 20__

2

# Time Charter

## GOVERNMENT FORM

### Approved by the New York Produce Exchange
### November 6th, 1913 -- Amended October 20th, 1921; August 6th 1931; October 3rd, 1946

1. *This Charter Party*, made and concluded in ...*Beijing*.....*21*  day of......*February*......*2008*..........~~19~~

2. Between  ...*Hongkong JinHai Shipping Co.,Limited*..........,

3. Owners of the good ......~~Steamship/Motorship~~ *"Jin Bin"*...of ......

4. of .........~~tons gross register, and~~ ......~~tons net register, having engines of~~...... ~~indicated horse power~~

5. ~~and with hull, machinery and equipment in a thoroughly efficient state, and classed~~... ..........................................................

6. at ......of about ......  ~~cubic feet bale capacity, and about~~ ...... ~~tons of 2240 lbs.~~

7. ~~deadweight capacity    (cargo and bunkers, including fresh water and stores not exceeding  one and one half percent of ship's deadweight capacity,~~

8. ~~allowing a minimum of fifty tons) on a draft of~~ ...... ~~feet......inches on......Summer freeboard, inclusive of permanent bunkers,~~

9. ~~which are of the capacity of about............tons of fuel, and capable of steaming, fully laden, under good weather~~

10. ~~conditions about ......knots on a consumption of about ......tons of best Welsh coal best grade fuel oil best grade Diesel oil,~~

11. now...*(See Description of vessel – as  per Clause 79 attached)*..........................................................................................

12. ....................and  *SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH*...Charterers of the City of  ... *Beijing*...........CHINA

13.     *Witnesseth*, that the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14. *about  24+12 months, about means 15 days more or less in Charterers' option Time Charter world wide trading via good safe port(s), berth(s), always accessible always afloat in/out geographical rotation always within*

15. *Institute Warranty Limited.   ......*within below  mentioned trading limits.

16. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17. The fulfilment of this Charter Party.

18. Vessel to be placed at the disposal of the Charterers, at  *on dropping last outward sea pilot Dalian, China, anytime day or night, Sundays and*

19. *Holidays included......*

20. ~~in such dock or at such wharf  or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6) as~~

21. ~~the Charterers may direct.  If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her delivery *arrival first loading berth* to be

22. ready to receive cargo  with clean-swept holds and tight, staunch, strong and in every way fitted for the *ordinary cargo* service,  having water ballast, and  ~~winches~~ *cranes* and

23. ~~donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to~~ run all the winches *cranes* at one and the same

24. time (and with full complement of officers   seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25. dise, ~~including petroleum or its products, in proper containers, excluding~~  ...*(See Clause 61)*................

26. ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

27. ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades,~~ between safe port and/or ports ~~in British North~~

For  and
HONGKON
香 片

.............

EX. A

28. America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or

29. Mexico, and/or South America , and/or Europe,

30. and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between

31. October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,

32. ...*World wide trading exclusions: See Clause 80*.................................................................................

33. .............................................................................................................................................................

34. .............................................................................................................................................................

35. as the Charterers or their Agents shall direct, on the following conditions :

36. 1. That the Owners shall provide and pay for all provisions, wages, and consular shipping and discharging fees of the crew ; shall pay for the

37. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water, and maintain her class and keep

38. the vessel in a thoroughly efficient state in hull, machinery and equipment *with certificate necessary to comply with current requirements at ports of call* for and during the service.

39. 2. That *whilst on hire* the Charterers, shall provide and pay for all the fuel *MDO* except as otherwise agreed, Port Charges, *compulsory and customary* pilotages, *(Bosporous pilot is compulsory)* , *Canal Dues*, Agencies, Commissions,

40. Consular Charges (except those pertaining to the Crew *and the flag of the Vessel*), and all other usual expenses except those before stated, but when the vessel puts into

41. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42. illness of crew to be for Owners account . Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43. charter to be for Charterers account . All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

44. of six months or more.

45. Charterers are to provide necessary dunnage, and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46. Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47. for dunnage, they making good any damage thereto.

48. 3. *(See Clause 30)* That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on

49. board the vessel , at the current prices in the respective ports, the vessel to be delivered with not less than..................... tons and not more than

50. ........tons and to be re delivered with not less than........tons and not more than...........tons.

51. 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of ...*9000USD* ( *Nine thousand U.S.Dollars*)........

52. *per day or pro rata including overtime*, FIRST TIME HIRE/BUNKERS ON DELIVERY TO BE PAID WITHIN 3 BANKING DAYS OF DELIVERY PRO RATA OR FOR PART OF DAY, United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and

53. stores, on ...................................... summer freeboard, per Calendar Month, commencing on and from the *time and day* of her delivery, as aforesaid, and at

54. and after the same rate for any part of a month *day;* hire to continue until the hour of the day of her re-delivery in like good order and condition, *per lines 21/27* ordinary

55. wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot one safe port China, port in charter's option,*

56. *any time day or night, Sundays and holidays included,* unless otherwise mutually agreed. Charterers are to give Owners NOT LESS THAN *30 days notice of redelivery range and 20/15/10/7 days*

57. notice of vessels expected date of re-delivery, and probable port *and 5/3/2/1 days definite notice together with definite port*

58.     5.     Payment of said hire to be made *net free of remitting bank charges* ~~in New York~~ in cash in United States Currency to *Owners' nominated bank account as per Clause 48,* ~~semi-monthly~~ *15 days* in advance, and for the last *15 days* ~~half-month~~ or

59. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60. due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61. hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62. terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers.  ~~Time to count from 7 a.m. on the working day~~

63. ~~following that on which written notice of readiness has being given to the Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64. ~~to have the privilege of using the vessel at once, such time used to count as hire.~~ *(See Clause 48)*

65.     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain *subject to Owners' prior approval,* by the Charterers or their Agents, subject

66. to 2 1/2 % commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67. of such advances *or for delays to the vessel as a result of obtaining the Owners' approval. .*

68.     6.     That the cargo or cargoes be laden and/or discharged in any dock or at any *wharf or anchorage* or place that Charterers or their Agents may

69. direct, provided the vessel can safely lie always afloat at any time of tide, except at such places in *Uruguay, Brazil and Argentina* where it is customary for similar size *and construction* vessels to safely

70. lie aground. *Prior to vessel LAYING SAFELY aground, Charterers to carry out underwater inspection by class approved surveyor, and after completing cargo operations, Charterers to carry out new underwater inspection to ascertain whether any damage has been caused by laying NAABSA. Should any damage have occurred, then same to be repaired in Charterers' time and at their risk and expense.*

71.     7.     That the whole reach of Vessel's Hold, Decks *hatchcovers* and usual places of loading (not more than she can reasonably  stow and carry), also

72. accommodations for Supercargo, if carried, shall be at Charterers' disposal reserving only proper and sufficient space for Ship's officers, crew,

73. tackle, apparel, furniture, provisions, stores and fuel. *No passengers permitted to be carried on this voyage.* ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

74. ~~paying Owners .....................per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75. ~~incurred in the consequences of carriage of passenger, Charterers are to bear such risk and expense.~~

76.     8.     That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77. boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and

78. agency; and Charterers are to load, stow, and trim, *tally and discharge* the cargo at their expense under the supervision of the Captain who is to sign Bills of Lading for

79. cargo as presented, in conformity with Mate's ~~or Tally Clerk's~~ receipts *( See Clause 33)*

80.     9.     That if the Charterers shall have the reason to be dissatisfied with the conduct of the Captain, Officers ,or Engineers, the Owners shall on

81. receiving particulars of the complaint, investigate the same, and, if   necessary make a change in the appointments. *But this provision does not affect Charterers' right to advance any claim or require arbitration of any dispute regarding the conduct of the Master in prosecution of the voyage and in carrying out time orders and directions of the Charterers*

82.     10.     That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that the voyages are prosecuted

83. with the utmost despatch.   He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the

84. rate of   ~~$4 .00~~ *5.00* per day.  Owners to victual Pilots and Custom Officers, and also, when authorised by Charterers or their Agents to victual Tally

85. Clerks, Stevedore's, Foremen, etc., ~~Charterers paying at the current rate per meal   for all such victualling..~~ *Charterers to pay Owners for cables/entertaining/victualling at USD1,000 per month or pro rata.*

86.     11.     That the Charterers shall furnish the Captain   time to time with all requisite instructions and sailing directions, in writing, and the

87. Captain shall keep a full and correct   Log of the voyage or voyages, which are to be patent to the Charterers or their Agents,   and furnish the Char-

88. terers, their Agents or Supercargo,  when required, with a true   copy   of   daily   Logs, showing   the course of the vessel and distance run and the con-

89. sumption of fuel .

90.   12. That the Captain shall use   diligence in caring for the ventilation of the cargo.

91.   13. ~~That the Charterers shall have the option of continuing this charter for a further period of..............~~

92. ..............................................................................................................................................

93. ~~on giving written notice thereof to the Owners or their Agents~~ ............. ~~days previous to the expiration of the first-named term, or any declared option.~~

94.     14.     That if required by Charterers, time not to commence before  *15 Jan 2008*  and should vessel

95. not have ~~given written notice of readiness~~ *delivered* on or   before *25 Jan 2008 with 24 hours Baltime Cancelling Clause* ~~but not later than 4p.m.~~ Charterers or

96. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97.     15.     That in the event of the loss of time from deficiency *and/or default of Master/Officers or crew* or men *or deficiency of* stores, fire, breakdown or damages to hull, machinery or equipment,

98. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99. preventing the full working of the vessel, unless such loss of time or *detention are caused due to the fault of Charterers or stevedores or their servants*, the payment of hire   shall cease for the time thereby lost ;  and if upon the voyage the speed be reduced by

100. defect in or breakdown of any part of her hull, machinery or equipment,   the time so lost, and the cost of any extra fuel consumed in consequence

101. thereof, and all extra   expenses shall be deducted from the hire.

102.     16.     That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103. returned to the Charterers at once.   The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation   throughout this Charter Party, always mutually excepted.

105. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate   for the

106. purpose of saving life and property.

107.     17.     *Bimco Law and Aribitration Clause 1998, English Law to apply (See Clause 51).* ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,~~

108. ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~

109. ~~purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men~~

110.    18.    That the Owners shall have a lien upon all cargoes, and all sub-freights    for any amounts due under this Charter, including General Aver-

111. age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrances incurred by them or their agents, which

113. might have priority over the title and interest of the owners in the vessel.

114.    19.    That all the derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115. Crew's proportion. General Average shall be adjusted, in *London in accordance with* ~~stated and settled according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~

116. York Antwerp Rules *1974 or amendments thereto.* ~~1924 at such port~~ or place ~~in the United States as may be selected by the carrier, and as to matters not provided for by these~~

117. ~~Rules, according to the laws and usages at the port of New York.~~ In such adjustments in foreign currencies shall be exchanged into

118. United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at

119. rate prevailing on last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or

120. bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposits as the carrier

121. or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if

122. required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the

123. carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the

124. place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in

125. United States money.

126.    ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

127. ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~

128. ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129. ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

130. ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131. ~~ships belonged to strangers.~~

132.    Provisions as to General Average in accordance with the above    are to be included in all bills of lading issued hereunder.

133.    20.    Fuel    used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the

134. cost of replacing same, to be allowed by Owners.

135.    21.    ~~That as the vessel may be from time to time employed in tropical waters during the term of this~~
~~Charter, vessel is to be deeked at a~~

136.~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in~~
~~every six months, reckoning from~~

137.~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138.

139. .................................................. ..................................................

140.    22.    Owners shall maintain the gear of the ship as fitted, providing  gear (for all  ~~derricks~~*cranes*)
capable of handling lifts  up to  three tons *maximum capacity in accordance with Description Clause* , also

141.providing ropes, falls, slings and blocks  *as on board.( See also Clause 62)*. If vessel if fitted with ~~derricks~~
*cranes* capable of handling heavier lifts, Owners are to provide necessary gear for

142.same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.  Owners also to provide on
the vessel  lanterns and oil  *electric light as on board* for

143.night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to
be at Charterers' expense.  The

144.Charterers to have the use of any gear on board the vessel.

145.    23.    Vessel to work night and day,    if required by Charterers', and all ~~winches~~ *cranes* to be at
Charterers' disposal during loading and discharging ; *Charterers to provide cranemen as required*.

146.~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to~~
~~pay officers, engineers, winchmen,~~

147.~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the~~
~~ship's articles.  If the rules of the~~

148.~~port, or labor unions, prevent crew from driving winches,~~ shore *cranemen* ~~Winchmen~~ to be paid by Charterers.
In the event of a disabled *crane or cranes* ~~winch or winches,~~ or

149.insufficient power to operate ~~winches~~ *cranes*, Owners to pay for shore engine, or engines, in lieu thereof, if
required, *and extra directly related expenses including standby expenses* and pay any loss of time
occasioned

150.thereby.  *Time to be reduced pro rata based on the number of holds affected. If Owners provide shore*
*gear to replace any defective crane then normal full hire payable.*

151.    24.    ~~It is also mutually agreed that this Charter is subject to all terms and provisions of and all the~~
~~exemptions from liability contained~~

152.~~In the Act of Congress of United States approved on the 13th day of February, 1893, and entitled "An Act~~
~~relating to Navigation of Vessels,~~

153.~~etc.," In respect of all cargo shipped under this charter to or from the United States of America.~~  It is further
subject to the *General Clause Paramount*

154.~~of which are to be included in all bills of lading issued hereunder :~~

155.                                    U.S.A. Clause Paramount

156.~~This bill of lading shall have effect subject to the provisions of the Carriage of goods by Sea Act of United States,~~
~~approved April 16,~~

157.~~1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a~~
~~surrender by the carrier of any~~

158.~~rights or immunities or an increase of any of its responsibilities or liabilities under said Act.  If any term of this bill~~
~~of lading~~

159.~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160.                                    Both to Blame Collision Clause

161.~~If the ship comes into collision with another ship as a result of the negligence of other ship and any act, neglect or~~
~~default of the~~

162.~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the~~
~~Owners of the goods carried~~

163. hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying-ship or her owners in so far as such loss

164. or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-

165. carrying-ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying-ship or her

166. owners as part of their claim against the carrying-ship or carrier.

167.    25.       The vessel shall not be required to enter any ice-bound port, or any port   where lights or light-ships have been or are about to be with-

168. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169. port or to get out after having completed loading or discharging.

170.    26.       Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers.  The owners to remain responsible for the

171. navigation of the vessel,  insurance, crew, and all other matters, same as when trading for their own account.

172.    27.       A commission of   2½-1.25per-cent-is-payable-by-the-Vessel-and-Owners-to- -Ocean-Robin-Shipping Holding-Corp.,

173. and 1.25 per cent to Atlantic Shipbrokers

174. ..................................................................................................................................................................................................................................................................

175. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

176.    28.       An address commission of   2 ½  per cent payable to Charterers  on the hire earned and paid under this Charter.

177. *Clause 29 to 88, as well as, as attached, are deemod to be p Conwartime 1993, New Both-to Blame Collisino Clause and New Jason Clause art of and fully incorporated in this Charter Party.*


This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of this original document which can be modified, amended or added to only by the striking out of original charterers, or the insertion of new characters, such characterers being clearly highlighted by underlining or use of color or use of larger font and marked as having been made by the licence or end user as appropriste and not by the author.


The original Charter Party in our possession.

For and on behalf of
HONGKONG JINHAI SHIPPING CO., LIMITED
The Owners 香 港 津 海 航 運 有 限 公 司

Authorized Signature(s)

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

#### Clause 29
Notice hereby given for 21th February , 2008. Owners will keep Charterers fully
advised of any change or changes in the ship's position.

#### Clause 30
Vessel to be delivered with about    MTS IFO and about    MTS MDO and
redelivered with the same quantities as actually on board on delivery. Prices at both
ends USD   per MT IFO and USD   per MT MDO. Bunkers on delivery to be paid
with the first hire payment. Charterers may deduct bunkers remaining on board on
redelivery from last sufficient hire payment.

Charterers may bunker the vessel for their own account prior to delivery for their own
account provided same does not interfere with Owners' operations (i.e. after change of
ownership but prior to sailing Lisbon. Owners may bunker the vessel for their own
account during the last voyage of this Charter Party provided it does not interfere with
Charterers' operations.

If the Vessel may be required to bunker in South Africa and IFO 380 CST RME 25 is
not available then Charterers may bunker the Vessel with IFO 380 CST RMF 25 in
accordance with ISO 8217 specification, in order to comply with the terms and
conditions of the various bunker supplies, the sample to govern quality shall be the
sample drawn by the supplier and witnessed the ships chief engineer or surveyor
appointed by Owners. Analysis of said sample in accordance with the recognised ISO
test methods at a mutually agreed reputable and dedicated laboratory and shall be
binding and conclusive for both parties, any claim in relation to fuel purchased by
Charterers shall be filed and documented within 21 working days from the day of
delivery furthermore in such circumstances the vessel must afterwards have at least
one intermediate bunkering of IFO 380 CST RME 25

BIMCO fuel sulphur content clause for time charter parties notwithstanding anything
else contained in this Charter Party, the Charterers shall supply fuels of such
specification and grades to permit the vessel, at all times, to meet the maximum
sulphur content requirements of any emission control zone when the vessel is trading
within that zone. The Charterers shall indemnify, defend and hold harmless the
Owners in respect of any loss, liability, delay, fines, costs or expenses arising or
resulting from the Charterers failure to comply with this clause.

For the purpose of this clause "emission control zone" shall mean zones as stipulated
in Marpol Annex VI and/or zones regulated by regional and/or national authorities
such as, but not limited to, the EU and the US environmental protection agency.

#### Clause 31

1

M.V. "JIN BIN"
**CHARTER PARTY DATED 21 FEBRUARY, 2008.**
<u>ADDITIONAL CLAUSES</u>

On delivery joint on-hire survey to be held in Owners' time and on redelivery joint off-hire survey to be held in Charterers' time. Charterers to nominate recognised independent surveyor for on- and off-hire surveys and cost of surveys to be shared equally between Owners and Charterers. No time to be deducted from hire if the working of the vessel is not delayed.

### Clause 32          Cleaning

Intermediate Hold Cleaning -
During the Charter period, all intermediate hold cleaning are at Charterers' time / expense / risk and responsibility for cargoes carried under this Charter and in any case, Owners are not responsible for passing cargo hold cleanliness inspection but understood Master and crew to exercise due diligence in preparing / cleaning holds for Charterers' employment. However, if requested by Charterers and agreed by Master, vessel's crew shall upon completion of discharge of each cargo (save the last cargo prior to redelivery), render customary assistance in cleaning all cargo compartments in preparation for the next cargo provided it is not prevented by any regulations or agreement whatsoever and vessel to remain on hire throughout. Such cleaning work shall be performed while vessel is en route to next loading port, provided the work can be safely done and the duration of voyage is sufficient. After work is done, Charterers are to pay Owners directly with hire payment lumpsum US$ 2,500.00 for holds cleaned including collection and disposal of dunnage and lashing materials .COST OF FRESH WATER FOR HOLD CLEANING ARE FOR CHARTERER'S ACCOUNT AND ARE UNDERSTOOD TO BE INCLUDED IN THE LUMPSUM PAID BY THE CHARTERS IN THE HOLD CLEANING MONIES. IF VESSEL HOLDS FAIL SUBSEQUENT SURVEY, AND LOCAL REGULATIONS ALLOW, THEN CREW TO ASSIST WITH RE-CLEANING AT NO ADDITIONAL CHARGE.

Holds on Redelivery -
Vessel to be redelivered to Owners with holds, decks and hatches in the same condition as on delivery (see Line 54 in main body of Charter Party). Charterers to have the option of redelivering the vessel in an unclean condition paying to Owners, in lieu of hold cleaning US$ ,000.00which to include collection and disposal of dunnage and  lashing materials.

### Clause 33
The Master hereby authorises, if required, the Charterers to sign Bills of Lading on his behalf, provided in conformity with Mate's Receipts. Charterers to remain responsible for claims resulting if Charterers' Bills of Lading are issued not in strict conformity with Mate's Receipts. Remarks on Mate's Receipts to be specific and not of a general or spurious nature.

### Clause 34
Owners are obliged to deliver and keep the vessel and her crew supplied with up-to-date and complete Cargo Gear Certificates, enabling the vessel and her crew to carry the cargoes and bunker within the trading limits allowed under this Charter Party. It is

## M.V. "JIN BIN"
### CHARTER PARTY DATED 21 FEBRUARY, 2008.
### ADDITIONAL CLAUSES

the responsibility of the Master and Owners to arrange for any special vaccination required at ports of call and to keep on board corresponding valid certificates. Failing this, any time lost and all directly related extra expenses to be for Owners' account.

Throughout the period of the Charter, vessel to be in possession of all necessary valid equipment and certificates to comply with Safety and Health Regulations, National and International Regulations, and all current requirements at all ports of call, Panama and Suez Canal included.

### Clause 35
At or off ports, provided vessel in safe anchorage, vessel's crew are to open and close the hatches where and when required, if permitted by local regulations.

### Clause 36
Owners confirm vessel to be always safe in ballast without requiring any solid ballast.

### Clause 37
Owners warrant that the vessel has not traded Israel under this Ownership and is not blacklisted by Arab countries and that the vessel is eligible for bunkers in the United States of America, its territories and possessions in accordance with U.S. Department of Commerce, Office of International Trade, Directive No. 705. It is clearly understood that the vessel is not restricted in U.S.A. trading or banned by the Arab League.

The vessel has not called North Korea or Cuba under this Ownership and is no way subject to any ban or restriction within the area of intended trading on Charterers' account.

### Clause 38
Owners confirm that the vessel is entered and shall remain entered for the duration of this Charter with a recognised International Protection and Indemnity Association. Charterers shall have the benefit of Owners' P. and I. Club as far as rules permit. Owners' P. and I. Club is
Charterers confirm they have full liability and P. and I. coverage with

### Clause 39
Cost of fresh water for vessel's consumption only to be for Owners' account. Any fresh water required by stevedore labour to be for Charterers' account.

### Clause 40
Time Charter rate includes the following crew services as part of customary assistance:-
      a)    All nautical duties necessary for safe navigation day and night, Sundays and holidays included.
      b)    Preparing of gear for loading / discharging operations.

3

### M.V. "JIN BIN"
### CHARTER PARTY DATED 21 FEBRUARY, 2008.
### ADDITIONAL CLAUSES

c)   Opening and closing of hatches before, during and after cargo operations.

d)   Supervision of stowage and putting necessary remarks in the Mate's Receipt and time sheet.

e)   Attending to deck cargo and its lashing whilst at sea.

f)   Providing one gangway watchman at night, but in case a local watchman is compulsory by port regulations, this local watchman to be paid by the Charterers.

Charterers' option to request from Owners assistance from crew where possible against extra payment for crew, which to be mutually agreed always through Owners' office.

All crew services subject to local labour regulations permitting, subject to their willingness and Master's approval.

### Clause 41
Owners to supply valid Deratisation or Exemption Certificate on delivery of the vessel and if this does not cover the whole period of the time charter or fumigation is necessary for renewal of the Deratisation Certificate, the cost of same and detention to be for Owners' account.

### Clause 42
Master to supervise stowage.

### Clause 43
Should the vessel put back while on voyage due to reduced speed for whatever reasons except adverse weather conditions in excess of Beaufort Scale 4 wind and sea, the Charterers shall deduct from the Charter hire the time so lost, excess bunkers consumed and any other directly attributable expenses incurred and substantiated as a result of such putting back. In describing vessel's consumption with the word "about" this is to mean half a knot less than time charter description.

### Clause 44
After suspension of hire from any cause, vessel to be placed again at Charterers' disposal at the same port or place or similar position where hire was suspended at any time of day or night. Owners guarantee that vessel will not dry-dock for annual repairs / survey during the currency of this Charter Party.

### Clause 45
Charterers not to be held responsible for any stevedore or other damage to the vessel incurred during loading and discharging operations unless:-

The Master notifies Charterers and/or their agents immediately, or as soon as possible, by telegram / in writing of any damages sustained by the vessel so that a claim can be made against the responsible party, except in the case of hidden damage which to be advised when known.

**M.V. "JIN BIN"**
**CHARTER PARTY DATED 21 FEBRUARY, 2008.**
<u>**ADDITIONAL CLAUSES**</u>

In the event of stevedore damage affecting the vessel's seaworthiness or class, or ability to perform as per Charter Party (for which Charterers or their servants are in any way responsible under this Charter Party), such damage to be repaired at the port where damage occurred and vessel to remain on-hire during this time.

M.V. "JIN BIN"
### CHARTER PARTY DATED 21 FEBRUARY, 2008.
### ADDITIONAL CLAUSES

#### Clause 46
The Charterers shall not be liable for loss of life nor personal injury nor arrest or seizure or loss or damage to the vessel or other objects arising from perils insured against by the usual policies of the insurance at Lloyds or other Marine Insurance Companies unless they occurred by negligence of Charterers or their servants.

#### Clause 47
Should the vessel be seized by any authority or arrested at the suit of any party having or purporting to have a claim against any interest in the vessel, hire shall not be payable in respect of any period during which the vessel is not fully at Charterers' use and all extra expenses incurred by Charterers during off-hire period which is proved by Charterers shall be for Owners' account, unless such seizure or arrest is occasioned by any personal act or omission of default of the Charterers or their agents, or by reason of cargo carried.

#### Clause 48
Payments to be made to:

A/C: HONGKONG JINHAI SHIPPING CO.,LTD
ADD: RM1504, TAI SANG COMMERCIAL BLDG., 24-34 HENNESSY
ROAD, WANCHAI, HONGKONG
BANK: BANK OF CHINA (HONG KONG) LIMITED
ADD: 9/F,Bank of China Tower,1 Garden Road, Hong Kong
USD A/C NO: (HK USD) 012-875-1-142711-3
            (USD)    012-875-9-239487-8
SWIFT CODE: BKCHHKHHXXX

First instalment of hire for 15 days and quantity of bunkers to be paid by Charterers on delivery within 3 BANKING days after delivery of the vessel.

Charterers have the right to deduct from the hire an amount corresponding to Owners' estimated disbursements maximum US$ 850 per port, (which can be deducted on last hire payment), off-hire period, any extra expenses incurred and substantiated for Owners' account. Charterers have the right to deduct value of bunkers on redelivery together with last sufficient hire payment. Charterers to pay on delivery 15 days hire in advance and cost of bunkers on delivery, thereafter as becomes due. Charterers undertake to reconcile Owners' expenses within 60 days of completion of Charter Party.

#### Clause 49
Charterers will supply the vessel with own forms of port logs, voyage reports, bunker reports and list of damaged cargoes, which the Master is obliged to fill out and return to Charterers' office as per instructions. It is expressly understood and agreed that Owners require the Master to give utmost assistance with completion and return of Charterers' documents, as specified above.

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

### Clause 50
Any delay, directly attributable expenses or fines incurred on account of smuggling, if caused by the Time Charterers' Purser and/or their staff, are to be for the Charterers' account, but if caused by the Officers and/or crew are to be for Owners' account.
If the vessel's crew or vessel are caught smuggling narcotics into U.S.A. waters or ports then this to be for Owners' responsibility.

### Clause 51    BIMCO STANDARD LAW & ARBITRATION CLAUSE 1998 ENGLISH LAW, LONDON ARBITRATION

This contract shall be governed by and construed in accordance with English Law and any dispute arising out of or in connection with this contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactments thereof save to the extent necessary to give effect to the provisions of this clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA small claims procedure current at the time when the arbitration proceedings are commenced.

### Clause 52
Vessel is officers and crew are employed in accordance with the terms and conditions of their respective unions and Owners agree to indemnify the Charterers against all claims, liabilities and costs which result from the Owners' failure to comply fully with the said requirements.

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

#### Clause 53
Owners confirm that during the currency of this Charter they will comply fully with any legislation enacted in respect of oil pollution by any Government, Department thereof or other Authority. If there is any delay to the vessel, or any extension of the voyage occurs from failure to comply with said act, rules, regulations for Oil Pollution, the vessel to be considered off-hire for the period of such delay or extension.

Owners guarantee to provide and maintain, during the entire time charter period, at their expense and carry onboard the vessel a valid U.S. Certificate of Financial Responsibility, Owners also guarantee to have secured current certificates for other countries / federal states or municipal or other division or authority thereof, where guarantees are required. All such certificates to be valid throughout the entire time charter period. The Charterers shall in no case be liable for any damages as a result of the Owners' failure to obtain the afore-mentioned certificates.

Time lost by non-compliance to be considered as off-hire and may be deducted from hire and Owners hold Charterers harmless against consequential losses damages or expenses.

#### Clause 54
It is understood that Owners will ensure that the vessel is in possession of valid Certificates of Efficiency of working equipment for the period of the Charter, as required by those laws which may be applicable, and that in the event of any delay to the vessel caused by the failure to produce such valid certificates, then Charterers may suspend hire for the time thereby lost.

#### Clause 55
It is understood and agreed that the Master has responsibility for the seaworthiness of the vessel. It is also understood and agreed that the Charterers are fully responsible inter alia for loading, stowing, tallying lashing, securing, unlashing, discharging, etc., all the cargo at their time, risk and expense.

#### Clause 56
Both-to-Blame Collision Clause and General Average, New Jason Clause, P. and I. Carriage of Nuclear Material Clause, P. and I. Pollution Clause, and General Clause Paramount, as attached hereto, are deemed to be incorporated in this Charter Party and are to be included in all Bills of Lading issued under this Charter Party. Bills of Lading issued under this Charter Party are to be subject to the United Kingdom Carriage of Goods by Sea Act 1924 and subsequent amendments. Bills of Lading also contain Conwartime 1993 to be incorporated into this Charter Party.

#### Clause 57
Charterers to supply lists and the Master shall keep a record of all Charterers' gear lashing materials, equipment and/or stores supplied by Charterers to the vessel and to maintain same in good condition. Such gear, lashing materials, equipment and/or

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
### ADDITIONAL CLAUSES

stores shall be redelivered to Charterers prior to redelivery of the vessel to Owners, or, if requested by Charterers, at any time during the period of the Charter in like good order and condition (ordinary wear and tear excepted) but Owners not to be responsible for any loss or damage thereto. Master, however, to make every effort to ensure the safe keeping of such equipment on Charterers' behalf.

### Clause 58

It is expressly agreed by Owners that Charterers shall have the option of using forklift trucks on board the vessel provided the gross laden weight of the forklift trucks is within the permissible weight load of each compartment of the vessel in which the forklift trucks would be used.

Vessel is suitable for grab discharge and no cargo to be loaded in places inaccessible to grabs or in deeptanks. Charterers to have the privilege of using bulldozers in vessel's holds. However, unit weight of bulldozers will not exceed vessel's tanktop strengths and her operation always under Master's supervision and satisfaction.

### Clause 59

Cargo claims, if any, to be apportioned in accordance with the New York Produce Exchange Inter-Club Agreement, including May 1984 amendments Part II and subsequent amendments.

### Clause 60      Additional Premium/Crew War Bonus

Any additional premium/crew war bonus due to Charterers' trading of the vessel to be for Charterers account. Such additional insurance premiums and bonuses for Charterers account to be settled with first hire payment due after receipt of proper vouchers from Owners' underwriters. Premium not to be higher than that quoted by Lloyds of London.

9

**M.V. "JIN BIN"**
**CHARTER PARTY DATED 21 FEBRUARY, 2008.**
<u>**ADDITIONAL CLAUSES**</u>

<u>**Clause 61**</u>        <u>**Cargo Exclusions**</u>
Sugar in bulk、 sulphur in bulk 、 corrosive cargo 、 danger cargo

<u>**Clause 62**</u>

Charterers have the option to load deck cargo. Same to be always in accordance with
IMO regulations and under the supervision of the Master and in accordance with
vessel's strengths and stability. Deck cargo always to be carried at Charterers' risk
and expense and Bills of Lading for deck cargo to be claused 'carried on deck without
liability for loss or damage however caused: Charterers are allowed to weld stanchion
sockets and/or eyebolts and/or ringbolts as far as needed to Master's satisfaction, to
secure deck cargo at Charterers' risk and expense. Same to be removed by Charterers
to Master's satisfaction, if required, prior to redelivery. The crew if agreeable and
allowed, is to assist in erecting and re-erecting uprights for deck cargo, if required by
Charterers, all crew costs being for Charterers' account. All lashing and securing
materials to be supplied by Charterers except that Charterers may use any material on
board provided Master / Owners agree. No welding of padeyes, etc. in places which
would adversely affect vessel's epoxy coated wing tanks or double bottoms or fuel oil
and gas oil tanks, but welding permitted elsewhere if required by Charterers same is
always subject to Master's prior approval, which not to be unreasonably withheld.
Any padeyes welded on board to be removed by the Charterers prior to vessel's
redelivery. Charterers' option not to remove padeyes against US$ 15.00 per padeye.

<u>**Clause 63**</u>

This Charter Party to be governed by English Law.

<u>**Clause 64**</u>

Charterers to have the benefit of any return insurance premium recoverable by
Owners' underwriters (as and when received from underwriters) by reason of the
vessel being in port for a minimum period of 30 days provided vessel is on hire.

<u>**Clause 65**</u>

Fixture to be strictly Private and Confidential.

<u>**Clause 66**</u>

Owners confirm they will sign and return signed copy of original Charter Party latest
prior redelivery provided Charter Party is in Owners' hands latest two weeks after
delivery.

<u>**Clause 67**</u>

Should Bills of Lading not arrive at discharge port in time, then Charterers are
permitted to discharge cargo without presentation of original Bills of Lading and

10

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

Charterers hereby state that they shall indemnify Owners against all consequences arising from Owners conforming to Charterers' request to discharging cargo without original Bills of Lading. Charterers to issue a single Letter of Guarantee in accordance with Owners' P. and I. Club wording signed by Charterers only. Charterers also to supply a copy of the Letter of Indemnity they received from their sub-Charterers.

No through Bills of Lading to be issued. Charterers hereby indemnify Owners against any costs / expenses / consequences arising from signing issuing Liner Bills of Lading.

### Clause 68

During the currency of the Charter Party Charterers' agents to provide minor husbandry services without extra agency charge. For major items (always including crew charge regardless of number of personnel involved) if an additional agency fee is required same to be as per tariff between Charterers and their agents. Owners always to remain responsible for additional costs.

### Clause 69        BIMCO Standard ISM Clause

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and 'the company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

### Clause 69 continued

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by the failure on the part of the Owners or 'the company' to comply with the ISM Code shall be for the Owners' account.

### Clause 70

In the event that cargo operations require the vessel to load from or discharge into barges / another vessel etc., the Master shall have the liberty of ordering such barges / vessel etc. away from his vessel at any time he deems same necessary in the interests of safety and/or the prevention of possible damage being caused. Charterers to supply fendering to Master's requirements / satisfaction at their time / risk / responsibility / expense.

### Clause 71

11

**M.V. "JIN BIN"**
**CHARTER PARTY DATED 21 FEBRUARY, 2008.**
**ADDITIONAL CLAUSES**

Deleted.

**Clause 72**

Deleted.

**Clause 73**

For the carriage of grain in bulk, vessel to have on board throughout this Charter period valid documents and certificates issued by the Classification Society and/or National Authority on the basis of the Solas 1974 regulations and latest amendments thereto.

The vessel is a single deck double skinned general cargo carrier and is suitable for the carriage of grain in bulk and capable of loading and sailing with untrimmed ends in accordance with N.C.B. and U.S./Canadian Coast Guard Regulations. If any additional trimming of grain is required, same to be for Owners' account.

**Clause 74**

On arrival first loading port vessel's cargo holds to be thoroughly cleaned, dried, free from rust, free from insects and free from any previous cargo residues and in all respects ready to load any permissible cargo under this Charter Party including grain and grain products. If vessel fails surveyor's inspection, vessel to be considered off-hire and all fuel consumed and extra directly related expenses for Owners' account.

**Clause 75**        **BIMCO Double Banking Clause**

(a)      The Charterers shall have the right, where and when it is customary and safe for Vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessel to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(b)      The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c)      Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d)      The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s)

12

## M.V. "JIN BIN"
### CHARTER PARTY DATED 21 FEBRUARY, 2008.
### ADDITIONAL CLAUSES

required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(e)     The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

#### Clause 76

The Owners will maintain the vessel's hatchcovers weathertight. All hatches are to be carefully tendered by crew to prevent leakage. Charterers are permitted to carry out hose tests at any time during the Charter Party.

#### Clause 77

Charterers to have the option of terminating this Charter in the event of vessel remaining off-hire for 30 days consecutive or more and may redeliver the vessel to Owners at any port or anchorage within trading limits, provided no cargo remaining on board. No liability whatsoever shall be attached to Charterers in the event of their exercising their option to terminate this Charter provided the off-hire caused due to Owners / vessel's faults.

#### Clause 78          Speed and Consumption Clause

Charterers are allowed to nominate an internationally recognised routing service to supply routes advice to the Master during voyages specified by the Charterers. The Master to comply with the routing procedures of the routing services. In the event of any dispute over apparent speed and consumption warranty, in the event of consistent discrepancy between the CP and ocean route's report, then ocean route's report shall be taken as final and binding for settlement of performance claim. It is expressly understood that the speed and consumption given is considered as about Beaufort 4.

Vessel to maintain speed/consumption as given upto Beaufort Scale 4 and Douglas Sea State 3.

#### Clause 79          Vessel's Description

```
BASIC
SHIP NAME           :      M/V JIN BIN
VESSEL TYPE         :      GENERAL CARGO
OWNER               :      HONGKONG JINHAI SHIPPING CO., LIMITED
BUILT DATE          : -    10-Dec-93
SHIP BUILDER        :      CHUNGJIN SHIPYARD KOREA
CALL SIGN           :      3EOP4
PATENT NO.          ;      36614-PEXT
```

13

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

| | | |
|---|---|---|
| IMO NO. | : | 8863202 |
| PORT OF REGISTRY | : | PANAMA |
| FLAG | : | PANAMA |
| CLASS | : | IS(INTERNATIONAL REGISTRER SHIPPING) |

REGISTER TONNAGE (MT)

| | | |
|---|---|---|
| GROSS TONNAGE | : | 6910.00 MT |
| NET TONNAGE | : | 3572.00 MT |
| DEAD WEIGHT | : | 9798.31 MT |

| | | |
|---|---|---|
| DIMENSIONS | : | |
| LENGTH OVERALL(M) | : | 130.95 M |
| L BETWEEN PERPENDICULAR | | 122.30 M |
| BREADTH MOULDED | : | 18.40 M |
| DEPTH | : | 10.40 M |
| HIGHT | : | 38.00 M |
| LIGHT DISPLACEMENT | : | 3831.67 MT |
| LOAD DISPLACEMENT | : | 13630.00 MT |

DIMENSIONS OF HATCH(M)

| | | |
|---|---|---|
| NO.1 | : | 8.2 X 9.1 M |
| NO.2 | : | 8.2 X 15.4 M |
| NO.3 | : | 8.2 X 15.4 M |
| NO.4 | : | 8.2 X 9.1 M |

CARGO LOAD CAPACITY(M3) :    GRAIN:12661.7 M3    BALE:11668.87 M3

| | NO.1 NO.4 | | NO.2 | | NO.3 | |
|---|---|---|---|---|---|---|
| | T/D T/D | L/H L/II | T/D | L/H | T/D | L/H |
| GRAIN | 991.5 1040.9 | 1241.9 1741.3 | 1582.8 | 2220 | 1590.5 | 2252.7 |
| BALE | 914 958 | 1135 1609 | 1458 | 2050 | 1465 | 2080 |

TANK CAPACITY(M3)

| | | |
|---|---|---|
| BALLAST | : | 1927.99 M3 |
| FRESH WATER | : | 688.71 M3 |
| FUEL OIL | : | 551.21 M3 |
| DIESEL OIL | : | 260.63 M3 |

**M.V. "JIN BIN"**
**CHARTER PARTY DATED 21 FEBRUARY, 2008.**
**ADDITIONAL CLAUSES**

| | | |
|---|---|---|
| DECK LOAD | | |
| UPPER DK | : | 1.5 T/M2 |
| TWEEN DK | : | 2.8 T/M2 |
| LOWER DK | : | 5.5 T/M2 |
| | | |
| HATCH COVER LOAD | : | 1 T/M2 |
| | | |
| LOAD DRAFT | | |
| SUMMER | : | 7.87 M |
| WINTER | : | 7.714 M |
| TROPICAL | : | 8.042 M |
| FRESH WATER | : | 8.054 M |
| | | |
| CRANE | : | 5 TONS/4 UNITS |
| MAIN ENGINE | : | SULZER 8 TAD 48 |
| TOTAL POWER | : | 3000HP(2205KW) |
| | | |
| CONSUMPTION | | |
| FUEL OIL | : | 8   MT/DAY |
| DIESEL OIL | : | 1.0 MT/DAY AT SEA |
| | | 1.2 MT/DAY AT PORT |

SPECIAL FITTINGS
AA    :        MECHANICALLY VENTILATED
BB    :        FITTED WITH CO2 FIRE EXTINGUISHING SYSTEM IN
CARGO SPACE
CC    :        ACCOMMODATION AIR CONDITIONING
DD    :        GMDSS
EE    :        BOW THRUST UNIT

| | | |
|---|---|---|
| MMSI | : | 357511000 |
| INMARSAT C | : | 435751110 |
| | | 435751111 |

**Clause 80    Trading Exclusions**
ALL THE ABNOMAL TRADING、 WAR AREA AND NO FURTHER THAN
WESTCOASTAL INDIA
**Clause 81**

Hire shall not be due for any time lost by reason of any boycott or blacklist of the
vessel or vessel being rendered inoperative by strikes, labour stoppages or any other

**M.V. "JIN BIN"**
**CHARTER PARTY DATED 21 FEBRUARY, 2008.**
**ADDITIONAL CLAUSES**

difficulties arising from the vessel's flag, nationality of her registry, her ownership or management, the nationality of any member of her crew or the terms on which the crew are engaged or any other vessel under the same ownership, management or control and Owners shall remain responsible for all directly related costs that may be incurred by the Charterers.

**Clause 82**

Vessel has not called CIS Pacific ports in the last 2 years. Owners guarantee that vessel meets all Agriculture Canada Plant Protection Division / National Cargo Bureau / United States Department of Agriculture Plant Protection and Quarantine Office Regulations. Furthermore, Owners guarantee that vessel is free of any Asian Gypsy moth eggs or larvae or any form of Asian Gypsy moth life. Should vessel be found to have same, vessel to be placed off-hire until vessel is cleared by port authorities, and any expense and time thereby incurred to be for Owners' account.

**Clause 83**
. U.S. Customs 24 hours rule for time Charter Parties:

    (A) If loading cargo destined for the us or passing through us ports in transit, the Charterers shall

        (I) Provide all necessary information, upon request by the Owners, to the Owners and/or their agents to enable them to submit a timely and accurate cargo declaration directly to the us customs, or

        (II) If permitted by U.S. Customs regulations (19 cfr 4.7) or any subsequent amendments thereto, submit a cargo declaration directly to the U.S. Customs and provided the Owners with a copy thereof.

    (B) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers failure to comply with the provisions of sub-clause (A)

    (C) If the vessel is detained, attached, seized or arrested as a result of the Charterers failure to comply with the provisions of sub-clause (A). The Charterers shall provide a bond or other security to ensure the prompt release of the vessel. Notwithstanding any other provision in this Charter Party to the contrary, the vessel shall remain on hire.

**Clause 84**

## M.V. "JIN BIN"
### CHARTER PARTY DATED 21 FEBRUARY, 2008.
### ADDITIONAL CLAUSES

Owners warrant that the vessel has on board the International Tonnage Certificate 1969 in full accordance with IMO Requirements and the International Convention on Tonnage Measurement of Ships 1960 or later amendment.

### Clause 85    Supplies/Necessities

Charterers undertake that during the period of this Charter Party they will not procure any supplies, necessaries or services including any port expenses and bunkers on the credit of the Owners, or in Owners name, but these will be procured always in the name of the time Charterers and shall always remain the responsibility of the time Charterers.

### Clause 86    BIMCO ISPS CLAUSE

(a)(i) From the date of coming into force of the International Code for the security of ships and of port facilities and the relevant amendments to chapter XI of SOLAS (ISPS code) in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel
and "the company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the vessel and "the company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The owners shall provide the Charterers with the full style contact details of the company security officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this clause shall be for the Owners' account.

(b)(i) The Charterers shall provide the CSO and the ship security officer (SSO)/master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-Charter Parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the owners with their full style contact details and, where sub-letting is permitted under the terms of the Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this clause shall be for the Charterers' account.

17

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the owners' negligence. All measures required by the owners to comply with the ship security plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this clause, the other party shall indemnify the paying party.

### Clause 87.

It is expressly agreed and understood that any services or goods ordered by the Charterers except requested by Owners/Master/Vessel for Owners account which is agreed in Charter party including but not limited to bunkers will be endorsed on the receipt "bunkers/goods supplied for Charterers account"

### Clause 88  Cancelling Clause

(a) Should the vessel not be ready to load (whether in berth or not) on the agreed cancelling date the Charterers shall have the option of cancelling this Charter Party.

(b) Should the Owners anticipate that, despite the exercise of due diligence the vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the vessels readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers with 24 running hours after the receipt of the Owners notice. If the Charterers do not exercise their option of cancelling then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners notification to the Charterers shall be the new cancelling date.

The provisions of sub-clause (b) of this clause shall operate only once, and in case of the vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this clause.

### CONWARTIME 1993

1.      For the purpose of this Clause, the words:

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

(a)     "Owners" shall include the shipowners, bareboat Charterers, disponent owners, managers or other operators who are charged with the management of the vessel, and the Master; and

(b)     "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2.     The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3.     The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or Ownership, or against certain cargoes or crews otherwise howsoever, or to proceed to an area where she shall be subject or is likely to be subject to a belligerent's right of search and/or confiscation.

4.     (a)     The Owners may effect war risks insurance in respect of Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks) and the premiums and/or calls therefore shall be for their account.

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

### CONWARTIME 1993 (Continued)

(b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5. If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

6. The vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the government of the nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

(e) to divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

20

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

### CONWARTIME 1993 (Continued)

7.  If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging port, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8.  If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

### GENERAL CLAUSE PARAMOUNT

All Bills of Lading issued under this Charter Party shall contain the following Clause :

This Bill of Lading shall have effect subject to the provisions of any legislation relating to the carriage of goods by sea which incorporates the rules relating to Bills of Lading contained in the international convention, dated Brussels, 25th August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, but nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder. If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such terms shall be void to that extent but no further. Nothing in this Bill of Lading shall operate to Limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability.

### P. & I. NUCLEAR MATERIAL CLAUSE

Notwithstanding any other provisions whether written or printed contained in this Charter it is agreed that nuclear fuel and radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party. This exclusions does not apply to radio isotopes used or intended to be used to any industrial, commercial, agricultural, medical or scientific purpose, provided Owners' prior approval has been obtained to the loading thereof.

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

### P. & I. CLUB POLLUTION CLAUSE

1. Owners warrant that throughout the currency of this Charter Party they will provide the vessel with the following certificates :

a) Certificates issued pursuant to the Civil Liability Convention 1969 ('C.L.C.')

b) Certificates issued pursuant to Section 311 (p) of the U.S. Federal Water Pollution Control Act, as amended (Title 33 U.S. Code, Section 1321 (p)).

c) Certificates which may be required by U.S. Federal legislation at any time during the currency of this Charter provided always that such legislation incorporates the C.L.C. as amended by the 1984 Protocol thereto or contains provisions equivalent thereto.

2. Notwithstanding anything whether printed or typed herein to the contrary:

a) Save as required for compliance with paragraph 1 hereof, Owners shall not be required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this Charter.

b) Charterers shall indemnify Owners and hold them harmless in respect of any loss, damage, liability or expense (including but not limited to the cost of any delay incurred by the vessel as a result of any failure by Charterers promptly to give alternative voyage orders) whatsoever and howsoever arising which Owners may sustain by reason of the vessel's inability to perform as aforesaid.

c) Owners shall not be liable for any loss, damage, liability of expense whatsoever and howsoever arising which Charterers and/or the holders of any Bill of Lading issued pursuant to this Charter may sustain by reason of the vessel's inability to perform as aforesaid.

3. Charterers warrant that the terms of this Clause will be incorporated effectively into any Bill of Lading issued pursuant to this Charter.

22

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

### OIL POLLUTION CLAUSE

The Owner agrees to indemnify the Charterers, his agents, or any other party against any liability which may be imposed on them or which they may incur under any statue regarding liability for pollution of any navigable waters by oil, by reason of any contravention of such statute by the vessel, the Master or any servant or agent of the Owners provided that such contravention shall not have been caused or contributed to by the party seeking to be indemnified under this Charter and provided that the facts and matters giving rise to the contravention do not constitute a defence under article 3/section 2 of the International Convention on civil liability for oil pollution damage 1969. The owners total aggregate liability in respect of any oil pollution incident shall under no circumstances exceed U.S. Dollars 300,000,000.00 and the extent of the indemnity under this Clause shall be limited to the difference between any cost and expenses incurred directly the Owners and U.S. Dollars 300,000,000.00. The Owner warrants that the vessel is entered in a P & I Association with cover for liabilities arising out of any contravention as aforesaid.

No liability for demurrage shall arise from any delay or loss of time to the vessel at port(s) or loading and/or discharging caused by any by any such contravention nor shall any time by any such contravention count when calculating despatch.

### BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:-

Both-to-Blame Collision Clause
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact"

and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

## M.V. "JIN BIN"
## CHARTER PARTY DATED 21 FEBRUARY, 2008.
## ADDITIONAL CLAUSES

### THE NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery,

and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same Clause.

### OCEAN ROUTE CLAUSE

In order to maximize vessel performance Master is to follow ocean route's suggestions concerning routing, but master at his reasonable discretion may depart from ocean routes due safety of the vessel duly advising ocean routes and entering in log book. Should master use his discretion as above unreasonable, the charterers to have title for claiming the eventual under performance."

Should the vessel put back while on voyage due to reduced speed for whatever reasons except adverse weather conditions in excess of Beaufort Scale 4 wind and sea, the Charterers shall deduct from the Charter hire upon the time so lost, excess bunkers consumed against weather routing reports.

Charterers may supply ocean routes to advise the Master during voyages specified and paid by Charterers. The Master to comply with the reporting procedure of the routing service but it is understood that final routing is always at Master's discretion. Master to do best to co-operate with Charterers.

Weather reports to be taken from the vessel's deck log and from ocean routes weather report. In the event of consistent discrepancies between the two sources, ocean routes reports shall be taken as ruling and and to be used for settlement of performance calim

香港津海航运 *HongKong JinHai Shipping*

## M.V. JIN BIN"
## CHARTER PARTY
## ADDITIONAL CLAUSES

*This Charter Party Additional Clauses, as the affix of the Charter Party Body is made and concluded in the day of......Between Hongkong JinHai Shipping Co.,ltd, Owners of the good Motorship "M.V.JIN BIN" and Charterers Sinotrans Ltd project transportation branch of the City of Beijing CHINA*

01. PERFORMING VSL: MV JIN BIN AS PER OWRS TC DESCRIPTION

-OWRS TO ADV BELLOW INFORMATION BY RETURN WITH THE FIRST COUNTER:

A.OWRS TO ADV VSL'S FULL TC DESCRIPTION AND VARIOUS PLANS INCL

G.A./SECTION/PROFILE/TANK    TOP    DIMENTION/TANK    TOP    STRENGTHS/MAIN    DECK STRENGTHS/CONSTANT/TPC/DWCC/TYPE OF HATCH COVER ETC.;

B.OWRS TO CONFIRM VSL'S DOX(SMC/DOC/PNI/CLASS/REGISTRY/TNNG CERTI/CREW LIST ETC.) IN ORDEER AND SEND SAME FOR THE PURPOSES OF VSL'S NOMINATION;

C.OWRS TO ADV VSL'S FULLITIN AS WELL AS VSL'S LAST 2 CGOES AND LAST PORT AGENT: IN ASIA REGION AND CAN'T GO BEYOND BENGAL GULF.

THE FINAL AGENTS ARE TAIZHOU AGENT AND HEHUI AGENT.

D.OWRS/MASTER TO PROVIDE PRE-STOWAGE PLAN WITHIN 24 HOURS AFTER RECEIPT OF PACKING LIST.

02.DURATION: FOR ABOUT 24+12 MONTHS    AT CHTRS OPTION. ABOUT MEANS+/-15DAYS

03.CARGO EXCLUSIONS: Sugar in bulk、sulphur in bulk 、corrosive cargo 、danger cargo

04.TRADING EXCLUSIONS: ALL THE ABNOMAL TRADING、WAR AREA AND NO FURTHER THAN WESTCOASTAL INDIA .

05.DELIVERY DLOSP DALIAN,CHINA ATDNSSHINC.

06.LAYCAN 15-25 JAN.,2008. LAYCAN TO BE BASED ON LOCAL TIME AND HIRE TO BE CALCULATED ON LOCAL TIME.

07.REDELIVERY    MAIN PORT OF CHINA.

08.HIRE USD 9000 DIOT

-1ST 15 DAYS HIRE PLUS BOD PAYABLE IN 5 DAYS AFTER VSL'S DELIVERY, THEREAFTER EVERY 15 DAYS IN ADVANCE. LAST HIRE TO BE PAID UPTO ESTIMATED TIME OF VSL'S REDELIVERY. TO PAY BUNKER COST WITH IN 5 DAYS AFTER DELIVERY. BALANCE HIRE IF ANY TO BE SETTLED TOGETHER WITH ANY OTHER EXPENSES W/IN 5 WKG DAYS AFTER VSL'S REDELIVERY AGAINST SUPPORTING DOCUMENTS.

-CHRS ENTITLED TO DEDUCT BOR VALUES FROM LAST SUFFICIENT HIRE(S).

09.BUNKER CLAUSE

-BOD AS ONBOARD: AS CHECK WHEN DELIVERY.

-BOR ABT SAME AS BOD

-BUNKER PRICE AS THE UNIT PRICE RECEIPT BY LAST PORT.

1

香港津海航运 *HongKong JinHai Shipping*

-MASTER'S OBLIGATION TO FOLLOW CHRS INSTRUCTIONS AND SAIL THE VSL ON SAFE CONDITION AND AT FULL OR IN CHOPT ECONOMIC SPEED.

-OWRS G'TEE VSL HAS SUFFICIENT BUNKERS ONBOARD TO PERFORM CHRS 1ST INTN VOYAGE WITH SAFETY MARGIN. CHRS G'TEE VSL HAS EQUIVALENT BUNKERS ON BOARD COMPARED WITH VSL DELIVERY WHEN REDELIVERY. AND THE BUNKER PRICE SHOULD BE AS THE SAME AS THE RPICE WHEN DELIVERY WITH IFO USD520 / MDO USD695.

10.ILOHC USD 1,000 ON CHRS' CHARGE IN LUMPSUMPER VOYAGE.

11.CABLE/ENTERTAINMENT/VICTUALLING USD 1,200 PER MONTHS PRORATA ON CHRS' CHARGE.

12.MASTER BONUS: SELF-PILOT, PASSING STRAITS BONUS TO BE SETTLED DIRECTLY WITH THE MASTER.

13.CHRS OPTION

A.TO ISSUE BS/L BY CHRS AGENTS. BS/L SHOULD BE OWRS' FORMAT.

B.TO ISSUE 'CLEAN ON BOARD' BS/L AGAINST CHRS AND SHPRS SINGLE LOI IN OWRS PNI CLUB WORDING SHOULD MATE'S RECEIPT BE CLAUSED(WIRE RODS).

C.TO DISCHG/RELEASE CGOES AGAINST CHRS SINGLE LOI IN OWRS PNI CLUB WORDING IF ORIGINAL BS/L NOT AVAILABLE UPON VSL'S ARRIVAL AT DISCHG PORT.

D.ANTI-DATED BS/L MUST AFFIRMED BY OWRS.

14. OWRS TO G'TEE VSL'S GEAR IN GOOD WKG CONDITION TO LIFT THE CGOES EFFICIENTLY AND SIMULTANEOUSLY. FAILING WHICH VSL TB PLACED OFF-HIRE FOR ANY/ALL TIME LOST RESULTING FROM ANY BREAKDOWN OR DEFFICIENCY OF ANY DERRICK/WINCH.

15.OWRS TO G'TEE VSL HAS SUFFICIENT LIGHTS ONBOARD TO ENABLE CHRS/SHPRS/RCVRS/STEVEDORES TO WORK AT NIGHT TIME. VSL TB PLACED OFF-HIRE FOR ANY/ALL TIME LOST CAUSED BY ANY ABSENCE OR DEFFICINCY OF ANY LIGHT(S) AS REQUIRED FOR NIGHT WORK.

16. Intermediate hold clean to be for chtrs account. And opening and closing hatchcover to be operated by crew and to be for owner/masters account.

17.OWRS TO ALLOW CHTRS FREE USE VSL'S VALID CHINESE TONNAGE DUE CERTIFICATE.

18. ARBITRATION IF ANY IN CHINA AND CHINESE LAW TO APPLY.

19.COMMISSION: **2.5%**

20.OTHERWISE AS PER NYPE 46.

21. ON DELIVERY OR LATEST ON ARRIVAL OF 1ST LOADING PORT VESSEL'S ALL CARGO HOLDS TO BE CLEAN SWEPT,WASHED DOWN AND DIRED UP, SO AS TO PASS SHIP'S HOLD INSPECTION BY INDEPENDENT SURVEYS AT LOADING PORT AND TO BE READY TO RECEIVE CHRTS INTENDED CARGO, OTHERWISE, VSL TO BE PUT OFF-HIRE FROM TIME OF FAILURE UNTIL THE TIME VSL HAS PASSED REINSPECTIONS, ALL TIME LOST/DIRECTLY RELATED EXPENSES INCURRED THEREBY TO BE FOR OWNERS ACCOUNT. IF VSL'S HOLDS ARE PARTIALLY PASSED AND LOADING COMMENCES IN THOSE HOLDS THEN VSL TO BE OFF-HIRE ON PRO RATA BSS.

22. That if the Charterers shall have the reason to be dissatisfied with the conduct of the Captain, Officers ,or Engineers, the Owners shall on receiving particulars of the complaint, investigate the same, and make a change in the appointments.

23. STEEL CARGO SURVEY EXCLUSION

2

香港津海航运 *HongKong JinHai Shipping*

The charterers accept the steel cargo survey regulation in JIN BIN P&I. INSURANCE CONFIRMATION OF COVER NO.2007DPNI000405PNI/C001, and the related survey charge will be at owners and charters expense with half and half.

24. HATCH COVER LOADING DEPENDS ON THE CAPABILITY OF EACH HATCH COVER

25. DECK LOADING LIMITED :

Upper deck: 1.5t/m2

2nd deck: 2.8t/m2

Bottom deck: 5t-6t /m2

Hatch cover:1t/m2

26. The Charterers shall provide and pay for all the fuel, fresh water to be for owners account except intermediate hold clean during the time charter period.

Hongkong Jinhai Shipping Co.ltd

*For and on behalf of*
**HONGKONG JINHAI SHIPPING CO., LIMITED**
香 港 津 海 航 運 有 限 公 司
2008/02/21

.......................... *Authorized Signature(s)*

Sinotrans Ltd project transportation branch

2008/02/21

3

Add: Unit A, 2/F Kingswell Commercial Tower                    Tel: (852) 3427 2328
171-173 Lockhart Road Wanchai HK

From:   Zhou Jianling [zhoujianling@sinotrans.com]
Sent:   08 April 2009 11:14
To:     Joyce Zhang; jk@keyun.com.cn
Cc:     Pan Sansheng; Yuan Junhua; ti@keyun.com.cn; Yao Juan; Cheng Yalin
Subject: MV "Jin Bin" return of the price of the bunkers on redelivery of the vessel

Dear Mr. Fan and Manager Zhang,

In respect of returning of the price of bunkers on redelivery, please refer to the email below.
212.8mt and 46.466mt are the bunkers' quantity on redelivery of the vessel which are not in
dispute. According to the price of the bunkers on delivery of the vessel: IFO USD520 / MDO
USD695, the total price of the bunkers on redelivery shall be US$142949.87. Please arrange
for returning the price in time.

Best regards,

Zhou Jianling

---

From:   Joyce Zhang [mailto: joyce@keyun.com.cn]
Sent:   18 November 2008 15:52
To:     Cheng Yalin; Zhou Jianling
Cc:     Pan Sansheng; Yuan Junhua; ti@keyun.com.cn; jk@keyun.com.cn; Yao Juan
Subject: Relevant issues regarding MV "Jin Bin" chartered to Sinotrans Limited Project
Transportation Branch
Importance: High

Dear Manager Cheng,

According to the email below, we will arrange for returning the charter hire which has been
over paid by you for the period from 16th to 20th (5 days) in the total sum of US$40,000.

In respect of the bunkers on redelivery, according to the telegraph from the Master of the
vessel, please see the attached:

Till 12th July, FO onboard the vessel: 212.8MT; DO onboard the vessel: 49.7MT
Till 21st July, FO onboard the vessel: 212.8MT; DO onboard the vessel: 40MT

July 16:

FO onboard the vessel: 212.8MT;
DO onboard the vessel: 49.7MT - (49.7 - 40) / 9 days × 3 days) (the three days from 12th to
15th to be responsible by the charterers) = 46.466MT.

Please confirm the above bunkers quantity.

Thanks.

Yours faithfully

Joyce

EX. B

## Wang, Zeldar

| | |
|---|---|
| **From:** | 周建领 [zhoujianling@sinotrans.com] |
| **Sent:** | 08 April 2009 11:14 |
| **To:** | Joyce Zhang; jk@keyun.com.cn |
| **Cc:** | 潘三胜; 裘俊华; ti@keyun.com.cn; 姚隽; 程亚林 |
| **Subject:** | 关于"浠滨"轮 还船油退款 |

范总 张经理,

您好!

关于浠滨轮还船油的问题,请参见以下邮件, 212.8mt 和 46.466mt 是没有争议的还船油量。根据交船油的价格:重油520美元/吨,,轻油695美元/吨, 总共金额:142949.87,请及时安排退款。

顺祝商祺!
周建领

---

发件人:Joyce Zhang [mailto:joyce@keyun.com.cn]
发送时间:2008年11月18日 15:52
收件人:程亚林;周建领
抄送:潘三胜;裘俊华;ti@keyun.com.cn;jk@keyun.com.cn;'姚隽'
主题:答复:关于"浠滨"轮外运期租期间的相关事宜
重要性:高

程经理

您好!
根据以下邮件,我司将安排尽快将16日到20日5天贵司多支付的租金退回,总计USD40,000。

关于存油,根据船长12日和21日的电报,请见附件:

截至7月12日,船上存油FO:212.8MT;DO49.7MT
截至7月21日,船上存油FO:212.8MT;DO40MT

7月16日:
FO的存量为FO212.8MT;
DO的存量为49.7MT-(49.7-40)/9天*3天(12日到15日3天由租家负责)=46.466MT;

请贵司确认以上存油量。
谢谢!


Yours faithfully

Joyce


24/09/2009

# BEST UNION TRANSPORTATION LIMITED

## DEBIT NOTE

### MESSRS: SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH

| To cost of the charges as following details: | |
| --- | --- |
| Vessel    JIN BIN | |
| Hire period from    0:00, 18th Jun, 2008    to    0:00, 5th Jul, 2008 | |
| HIRE | USD120,000.00 ( USD8,000.00/Day*15 ) |
| | |
| | |
| TOTAL: | USD120,000.00 |

E.& O.E.

**BEST UNION**

For and on behalf of
BEST UNION TRANSPORTATION LIMITED
佳　聯　貨　運　有　限　公　司

ACCOUNT DETAILS AS BELOW:                                    Authorized Signature(s)
Account Name: BEST UNION TRANSPORTATION LIMITED
Intermediary Bank:   CITIBANK N.A.NEW YORK
SWIFT BIC:  CITIUS33XXX
Beneficiary Bank:  Shanghai Pudong Development Bank Offshore Banking Departement
SWIFT BIC:  SPDBCNSHOSA
Beneficiary's Account Number:  OSA11443630150425

EX. C